UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division


FILED

JUL 3 1 2017

CLERK, US DISTRICT COURT
NORFOLK, VA

AMERICAN UNITED LIFE
INSURANCE COMPANY
AND
THE STATE LIFE
INSURANCE COMPANY,

        Plaintiffs,

v.                               CIVIL ACTION NO. 2:17cv99

SAHDE Z. MAYS, Individually
and as Trustee of the
Restated Robert Veale
Living Revocable Trust,
TIMOTHY E. WHITNEY, JR.,
LLOYD T. VEALE,
AND
STEPHEN LENTZ,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on the "Renewed Motion for Receipt and Deposit of Interpleader Funds" ("Motion to Deposit"), and accompanying Memorandum, filed by American United Life Insurance Company and The State Life Insurance Company (collectively, the "Plaintiffs") on March 31, 2017. ECF Nos. 19, 20. The Defendants' time to respond has now expired, and no response was received. Additionally, the Plaintiffs have waived oral argument in this matter. ECF No. 30. Accordingly, the Motion to Deposit is now ripe for review.

Also before the court is the "Motion to Strike the Affirmative Defenses of Timothy E. Whitney, Jr. and Lloyd T. Veale" ("Motion to Strike"), and accompanying Memorandum in Support, filed on May 4, 2017, by Defendant Sahde Mays ("Defendant Mays"). ECF Nos. 34, 35. Defendant Timothy Whitney ("Defendant Whitney") filed his Response and Memorandum in Support on May 15, 2017. ECF Nos. 37, 38. However, the Motion to Strike was filed subject to defect, in regard to pro se Defendant Lloyd Veale ("Defendant L. Veale"), for failure to include a notice consistent with the requirements of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K). ECF No. 39. The defect was corrected by Defendant Mays on May 26, 2017. See ECF Nos. 43, 44. Defendant L. Veale still did not file a response to the Motion to Strike. Accordingly, the Motion to Strike is now ripe for review.

I.

In October of 2014, Robert H. Veale ("Robert") bought two life insurance policies from the Plaintiffs, which policies are collectively worth $700,000. Am. Compl. ¶¶ 12-25, ECF No. 29; Ex. 1, ECF No. 1-1; Ex. 3, ECF No. 1-3. The original beneficiaries of these policies were Defendant Mays, Robert's daughter; Defendant Whitney, Robert's cousin; and Defendant L. Veale, Robert's brother. Am. Compl. ¶¶ 17-18, 24-25; Ex. 2, ECF No. 1-2; Ex. 4, ECF No. 1-4. On December 18, 2015, Robert

2

established the Robert H. Veale Revocable Living Trust (the "Trust"), for which Robert served as the original trustee and for which Robert's attorney, Defendant Stephen Lentz ("Defendant Lentz"), would serve as the successor trustee on Robert's death. Am. Compl. ¶¶ 26-29; Ex. 5, ECF No. 1-5. On July 25, 2016, Robert purportedly submitted documentation attempting to (1) transfer ownership of the two policies to the Trust and (2) change the beneficiaries of the policies to the Trust. Neither change was recorded by the Plaintiffs on the basis that "proper and complete documentation" was not submitted. Am. Compl. ¶¶ 30-37; Ex. 6, ECF No. 1-6; Ex. 7, ECF No. 1-7; Ex. 8, ECF No. 1-8; Ex. 9, ECF No. 1-9.

On November 23, 2016, six days before his death, Robert issued a "Declaration of Trust," which purportedly amended and restated the Trust. Am. Compl. ¶¶ 38-39; Ex. 10, ECF No. 1-10 ("This instrument is a complete restatement of the original trust dated December 18th, 2015, and is intended to totally replace the original trust and any subsequent restatements to the original trust."). On this same day, Robert also purportedly signed and submitted another form to the Plaintiffs changing the beneficiaries of the life insurance policies to be transferred to the Trust. Am. Compl. ¶¶ 40-41; Ex. 11, ECF No. 1-11. This beneficiary change was recorded by the Plaintiffs, and a letter was sent to Robert notifying him of such. Am. Compl. ¶¶ 42-43;

3

Ex. 12, ECF No. 1-12. Both the restated Trust document and change in beneficiary form were purportedly signed at Robert's request by another individual.[1] Am. Compl. ¶¶ 44-45; Ex. 13, ECF No. 1-13; Ex. 23, ECF No. 1-23. The restated Trust designated Robert and Mavis McKinley, in her capacity as a Trust Officer with AMG National Trust Bank (or any other trust company with which she may be employed), as primary co-trustees. Am. Compl. ¶ 49; Ex. 10, at 2, ECF No. 1-10. If Robert ceased to serve as trustee, AMG National Trust Bank was designated to serve as the sole trustee. Ex. 10, at 2, ECF No. 1-10. If none of these three could serve as trustee, the restated Trust required Anchor Financial Group ("AFG") to select a professional successor trustee. Am. Compl. ¶ 49; Ex. 10, at 2-3, ECF No. 1-10.

---

[1] Another of Robert's attorneys, Veronica Williams, drafted the restated Trust document, "presided over the execution of his trust based estate plan, and . . . served as notary public during the bedside execution of his documents." Ex. 13, at 1, ECF No. 1-13. In a "[l]egal opinion letter" to the Plaintiffs, Ms. Williams explains that "another individual" signed the restated Trust document on Robert's behalf and at Robert's direction. Id. at 2. Although Ms. Williams's letter does not name this individual, it indicates the restated Trust document was signed by the agent "newly appointed" under the "Financial Power of Attorney" form, also signed by another individual on Robert's behalf and at Robert's direction, id., which implies that it was Robert's friend, James Battle. See infra at 5-6. Ms. Williams's letter does not specifically explain how the change in beneficiary form was executed, but it states that "each of [Robert's] estate planning documents" were executed using this "alternative method" as authorized under Virginia law. Ex. 13, at 2, ECF No. 1-13.

4

Robert died on November 29, 2016. Am. Compl. ¶¶ 9, 64-65; Ex. 19, ECF No. 1-19. On December 5, 2016, AFG appointed James Battle ("Battle") as the "Interim Successor Trustee" of the restated Trust. Am. Compl. ¶¶ 52-53; Ex. 15, ECF No. 1-15. The same day, Battle submitted a claim for the proceeds of the two life insurance policies. Am. Compl. ¶¶ 66-67; Ex. 20, ECF No. 1-20. Battle also provided the insurance companies with a signed "Trust Affidavit" form. Am. Compl. ¶¶ 68-69; Ex. 21, ECF No. 1-21. On December 6, 2016, AMG National Trust Bank declined to serve as trustee of the restated Trust. Am. Compl. ¶¶ 50-51; Ex. 14, ECF No. 1-14. Two days later, on December 8, 2016, Battle requested the proceeds be wired to an account in the Trust's name. Am. Compl. ¶¶ 75-76; Ex. 24, ECF No. 1-24. On December 15, 2016, Battle resigned as trustee. Am. Compl. ¶¶ 54-55; Ex. 16, ECF No. 1-16. AFG and Defendant Mays subsequently executed the Non-Judicial Settlement Agreement and the Certificate of Successor Trusteeship, appointing Defendant Mays as the successor trustee of the restated Trust. Am. Compl. ¶¶ 57-59; Ex. 26, ECF No. 29-1; Ex. 27, ECF No. 29-2.

Overlapping these changes with the insurance policies and the Trust are documents vesting power of attorney for Robert with different individuals. On June 14, 2016, Robert signed a "Durable Power of Attorney" appointing Defendant Whitney as his Attorney-in-Fact and Defendant L. Veale as successor should

5

Defendant Whitney be unable to serve. Am. Compl. ¶¶ 60-61;
Ex. 17, ECF No. 1-17. On November 23, 2016—the same day Robert
purportedly had another individual sign the documents restating
the Trust and changing the beneficiaries of the life insurance
policies to the Trust—he allegedly signed another "Durable
Financial General Power of Attorney," which named Battle as his
Power of Attorney and "revoke[d] all previously executed
financial powers of attorney, of any sort." Am. Compl. ¶¶ 62-63;
Ex. 18, ECF No. 1-18.

Defendants L. Veale and Whitney challenge the validity of
the change in beneficiary form purportedly executed at Robert's
behest on November 23, 2016. See Am. Answer of Defendant Whitney
[hereinafter "Whitney Am. Answer"] ¶¶ 10-11, ECF No. 31; Answer
of Defendant L. Veale [hereinafter "L. Veale Answer"] at 1, ECF
No. 9; Am. Answer of Defendant L. Veale [hereinafter "L. Veale
Am. Answer"] ¶¶ 3-4, ECF No. 47. Accordingly, both Defendants L.
Veale and Whitney claim they are entitled to their shares of the
proceeds of the insurance policies. Am. Compl. ¶¶ 77-78; Ex. 25,
ECF No. 1-25; Whitney Am. Answer ¶ 12. Defendant Lentz, "as the
initial trustee . . . makes no claim to the proceeds of the
policies at issue." Answer of Defendant Lentz [hereinafter
"Lentz Answer"] ¶ 5, ECF No. 40-1. Defendant Mays also initially
questioned the validity of the change in beneficiary form signed
on November 23, 2016. See Am. Compl. ¶¶ 71-72; Ex. 22, ECF

6

No. 1-22. However, she has since accepted "the explanation relating to the execution of the[] documents provided by [Robert's] attorney, Veronica Williams." Answer of Defendant Mays [hereinafter "Mays Answer"] ¶ 7, ECF No. 32. Accordingly, Defendant Mays "denies that the plaintiffs need the assistance of this court to pay out the benefits under their policies." Id. ¶ 8. Based on these claims and disputes, the Plaintiffs brought this action in interpleader.

## II.

The Motion to Deposit[2] requests leave to deposit with the court the proceeds owed by the Plaintiffs under the insurance policies (the "Benefits"). Mot. to Deposit at 1. The Motion to Deposit also contains an implied request to dismiss with prejudice the Plaintiffs from this case and enter a permanent injunction prohibiting any of the Defendants from "instituting any action or proceeding in any state or United States court against [the Plaintiffs] for the recovery of the Benefits," if the court grants the Motion to Deposit and on payment of the Benefits into the court's registry. See ECF No. 20-1 at 2-3.

---

[2] The Motion to Deposit was previously granted by the court. See ECF No. 21. However, on reassignment of this case to the undersigned, the order was vacated as premature as the Defendants' time to respond to the Motion to Deposit had not yet expired and the Plaintiffs had a motion seeking leave to file an amended complaint before the court. ECF No. 24.

**A.**

"Interpleader is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund." Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc., 40 F. App'x 767, 769 (4th Cir. 2002). An equitable remedy, interpleader's purpose is to protect the disinterested stakeholder from "multiple, inconsistent judgments and to relieve it of the obligation of determining which claimant is entitled to the fund." Id. There are two distinct methods for invoking interpleader in a federal court, "statutory" interpleader under 28 U.S.C. § 1335, and "rule" interpleader under Federal Rule of Civil Procedure 22, and each has its own jurisdictional requirements.

Here, the Plaintiffs have invoked both statutory interpleader and rule interpleader on the basis of diversity of citizenship. Am. Compl. ¶¶ 7-8. In regard to statutory interpleader,

> district courts have original jurisdiction over actions if: (1) the amount in dispute exceeds $500; (2) there are two or more adverse claimants of diverse citizenship; and (3) the plaintiff deposits the money or property in dispute into the registry of the court or posts an adequate bond. 28 U.S.C. § 1335. Section 1335 has been "uniformly construed to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530 (1967).

<u>Allstate Life Ins. Co. v. Ellett</u>, No. 2:14cv372, 2015 WL 500171, at *2 (E.D. Va. Feb. 4, 2015). "By contrast, rule interpleader . . . is a procedural device only, and jurisdiction must therefore be proper under 28 U.S.C. § 1331 (federal question jurisdiction) or § 1332 (diversity jurisdiction)." <u>Id.</u>

Regardless of the mechanism used to invoke interpleader, an interpleader action generally proceeds in two stages. "First, the court must determine whether the plaintiff 'has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader.'" <u>Id.</u> (quoting <u>United States v. High Tech. Prods., Inc.</u>, 497 F.3d 637, 641 (6th Cir. 2007)). "Once a court determines that interpleader is appropriate, the court 'may discharge the plaintiff from further liability,' and may enter an injunction restraining the claimants from litigating related actions in state or federal court." <u>Id.</u> (citing 28 U.S.C. § 2361; <u>High Tech. Prods.</u>, 497 F.3d at 641). In the second stage, "the case continues between the claimants to determine their respective rights . . . [via] the 'normal litigation processes, including pleading, discovery, motions, and trial.'" <u>Metro. Life Ins. Co. v. Vines</u>, No. WDQ-10-2809, 2011 WL 2133340, at *2 (D. Md. May 25, 2011)

(quoting High Tech. Prods., 497 F.3d at 641); see Allstate Life
Ins. Co., 2015 WL 500171, at *2.

## B.

Here, the Plaintiffs have met all the requirements for
invoking both statutory and rule interpleader. First, the
Benefits in controversy total $700,000, which exceeds both the
$500 jurisdictional requirement for statutory interpleader and
the $75,000 diversity jurisdiction requirement that applies to
rule interpleader. Second, diversity is satisfied under both the
minimal diversity standard for statutory interpleader and the
complete diversity requirement of § 1332 that applies to rule
interpleader: The Plaintiffs are citizens of Indiana; Defendant
Mays is a resident of New Jersey, Defendant L. Veale is a
resident of Florida, and Defendant Whitney and Defendant Lentz
are residents of Virginia. Am. Compl. ¶¶ 1-7. Third, the
Plaintiffs have asserted that they stand ready to deposit the
Benefits with the court, as is required under statutory, but not
rule, interpleader.

Moreover, the Plaintiffs legitimately fear "not just
potential conflicting claims, but actual, and colorable,
conflicting claims." Allstate Life. Ins. Co., 2015 WL 500171,
at *3. The Plaintiffs have received letters staking claim to all
or some of the Benefits from at least two Defendants in this
case. Am. Compl. ¶¶ 66, 77. Although this stage does not require

inquiry into the merits of each claim, see Allstate Life. Ins. Co., 2015 WL 500171, at *3 (rejecting claimant's assertion that court should determine at the first stage whether the two claimants had both presented "'valid' competing claims"), the claims must not "be so wanting in substance that interpleader under the statute may not be justified," N.Y. Life Ins. Co. v. Lee, 232 F.2d 811, 813 (9th Cir. 1956). Defendant Mays's Motion to Strike does not demonstrate that all other claims to the Benefits are so wanting in substance that interpleader is not justified. See infra Parts III-IV. Accordingly, the Plaintiffs' fear of multiple lawsuits is legitimate.

Finally, there are no facts to suggest that there are any equitable concerns weighing against use of interpleader. Accordingly, the Plaintiffs have properly invoked interpleader and the court **GRANTS** the Plaintiffs' Motion to Deposit provided that the Plaintiffs deposit with this court's registry, within fourteen (14) days of the date of entry of this Memorandum Opinion and Order, a certified check in the amount of $700,000 plus accrued interest from the date of Robert's death until the date of deposit with the court, which proceeds represent the Benefits in dispute in this action. Upon such deposit, the Defendants are **ENJOINED** from instituting or prosecuting any judicial proceeding against the Plaintiffs in any State or United States court pertaining to the Benefits in

dispute in this action. Additionally, upon such deposit, the Plaintiffs are **DISMISSED** from this matter.

### III.

In the Motion to Strike, Defendant Mays argues that Defendants L. Veale and Whitney have not sufficiently pled duress, undue influence, and lack of mental capacity under Virginia law to challenge the validity of the change in beneficiary form dated November 23, 2016. Mot. to Strike ¶¶ 1-4; Mem. Supp. Mot. to Strike at 4-5. Defendant Mays does not identify the particular Federal Rule of Civil Procedure under which she moves the court to strike the answers and defenses of Defendants Whitney and L. Veale for being insufficient. By its title and language, the court construes the Motion to Strike under Rule 12(f), which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

The district court has "broad discretion" to decide Rule 12(f) motions. Certusview Techs., LLC v. Usic, LLC, No. 2:14cv373, 2014 WL 12591937, at *4 (E.D. Va. Dec. 15, 2014). When reviewing a motion to strike, the court views the pleading in the light most favorable to the pleader. Kalos v. Law Offices of Eugene A. Seidel, P.A., No. 1:09cv833, 2009 WL 3583606, at *3 (E.D. Va. Oct. 26, 2009) (quoting Clark v. Milam, 152 F.R.D. 66,

71 (S.D.W. Va. 1993)). If the motion is granted, courts typically grant leave to amend the pleading. Id. (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1381 (3d ed. 2004)); see Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Additionally, because this court's jurisdiction here rests on diversity of citizenship under both statutory interpleader and rule interpleader, the court applies Virginia law to assess the adequacy of the substantive elements of the defenses, but employs federal procedural law to weigh the sufficiency of the factual allegations supporting the defenses. See, e.g., Fields v. Jobar Int'l, Inc., No. 3:14cv50, 2014 WL 1513289, at *1 (E.D. Va. Apr. 16, 2014).

### IV.

The court addresses separately the sufficiency of Defendant Whitney and Defendant L. Veale's pleadings.

### A. Defendant Whitney

Defendant Whitney pleads as follows:

10. The Plaintiffs should not release the funds to the Restated Robert H. Veale Living Revocable Trust because Robert H. Veale was subject to undue influence, duress and constraints by James Battle, Barry Farr and representatives of Anchor Financial Group at the time that Robert H. Veale allegedly signed the designation of Beneficiary Change form (Exhibit 10 to Plaintiffs' Complaint), purporting to

13

> name the Restated Robert H. Veale Living Revocable
> Trust as the beneficiary.
>
> 11. The Plaintiffs should not release the funds to the
> Robert H. Veale Trust because Robert H. Veale was
> terminally ill, was under the influence of narcotic
> pain medication and did not possess sufficient mental
> capacity to execute the signed designation of
> Beneficiary Change form (Exhibit 10 to Plaintiffs'
> Complaint) purporting to name the Restated Robert H.
> Veale Living Revocable Trust as the beneficiary.

Whitney Am. Answer ¶¶ 10-11. Defendant Whitney clarifies in his
Response that "[p]aragraph 10 sets forth the legal claims while
[p]aragraph 11 sets forth some of the facts upon which Whitney
. . . rel[ies]." Mem. Supp. Resp. at 10. Accordingly, the only
defenses pled by Defendant Whitney and challenged by Defendant
Mays are duress and undue influence. Both are species of fraud
and, consequently, the heightened pleading standard of Federal
Rule of Civil Procedure 9(b), as well as Virginia's
particularity requirement, apply. See King v. Donnkenny, Inc.,
84 F. Supp. 2d 736, 739 (W.D. Va. 2000) ("Federal Rule of Civil
Procedure 9 requires that the Plaintiff plead duress, a species
of fraud, with particularity." (citing Mortarino v. Consultant
Eng'g Servs., 467 S.E.2d 778, 782 (Va. 1996))); Davis v.
OneWestBank, F.S.B., No. 3:09cv699, 2010 WL 538760, at *4 n.3
(E.D. Va. Feb. 12, 2010) ("'Undue influence is a species of
fraud.' As such, it must be pled with particularity." (quoting
Tabb v. Willis, 156 S.E 556, 563 (Va. 1931))). Defendant Whitney

requests leave to amend should the court strike any of his defenses. Mem. Supp. Resp. at 12.

In Virginia, duress is present when "one party to the transaction is prevented from exercising his free will by reason of threats made by the other and . . . the contract is obtained by reason of such fact. . . . Authorities are in accord that the threatened act must be wrongful to constitute duress." Norfolk Div. of Soc. Servs. v. Unknown Father, 345 S.E.2d 533, 541 (Va. Ct. App. 1986) (internal quotation marks and citations omitted); Nelson v. Nelson, Record No. 0603-05-2, 2005 WL 1943248, at *2 (Va. Ct. App. Aug. 16, 2005). Defendant Whitney has not pled all the elements of duress, let alone with the particularity required by Rule 9(b) and Virginia law. Specifically, he has failed to allege any wrongful act by the individuals he claims exerted duress, namely Battle, Barry Farr ("Farr"),[3] or AFG's representatives, that destroyed Robert's free will. Although Defendant Whitney now states in his Response that the narcotic medication destroyed Robert's free will, see Mem. Supp. Resp. at 10, he makes no allegation that Battle, Farr, or AFG's representatives participated in any decisions for administering this medication. Furthermore, under Virginia law, only Robert, or a party bringing suit in his stead, can assert

---

[3] Farr appears to be a friend of Robert's. See L. Veale Answer at 1.

duress. See Norfolk Div. of Soc. Servs., 345 S.E.2d at 541 ("The general rule is that duress must have been exercised upon him or her who sets it up as a defense, by him who claims the benefit of the contract, or by someone acting in his behalf or with his knowledge." (internal quotation marks and citations omitted)). Even if Defendant Whitney could assert duress on Robert's behalf under some exception to this general rule, he does not allege any such exception. See id. (stating the "general rule" for pleading duress as a defense to a contract).

Virginia law also requires that the person pleading duress (here, Whitney) also allege how the party purported to have exerted duress (here, Battle, Farr, or AFG's representatives) benefitted from the change in beneficiary—which, again, Whitney has not alleged. See id. Alternatively, Whitney could have alleged that Battle, Farr, or AFG's representatives put Robert under duress on Defendant Mays's behalf or with her knowledge, and pled how she benefitted from the change in beneficiary. Because Whitney did not make any such allegations, he has insufficiently pled duress as a defense. See generally id.

Under Virginia law, "undue influence requires a showing that the free agency of the contracting party has been destroyed." Parfitt v. Parfitt, 672 S.E.2d 827, 829 (Va. 2009). Acknowledging that "[d]irect proof of undue influence is often difficult to produce," Virginia courts have identified two

16

situations that are deemed "sufficient to show that a contracting party's free agency was destroyed, and, once established, shift the burden of production to the proponent of the contract." Id. First, "[w]here great weakness of mind concurs with gross inadequacy of consideration, or circumstances of suspicion, the transaction will be presumed to have been brought about by undue influence." Id. (citing Bailey v. Turnbow, 639 S.E.2d 291, 293 (Va. 2007)). Second, "[w]here one person stands in a relationship of special confidence towards another, so as to acquire an habitual influence over him, he cannot accept from such person a personal benefit without exposing himself to the risk, in a degree proportioned to the nature of their connection, of having it set aside as unduly obtained." Id. (citing Bailey, 639 S.E.2d at 293). "These principles apply to gratuitous transfers as well as contracts." Id.

Defendant Whitney has also insufficiently pled the elements of undue influence, let alone with the particularity required by Rule 9(b) and Virginia law. In the first instance, although Defendant Whitney has alleged weakness of mind, see Whitney Am. Answer ¶ 11 (alleging influence of narcotic pain medication and insufficient mental capacity), he has not alleged any other facts that would suggest gross inadequacy of consideration or suspicious circumstances. With respect to the confidential

17

relationship theory of undue influence, although Defendant Whitney has named Battle, Farr, and AFG's representatives as those that exerted the undue influence over Robert, see id. ¶ 10, he has not alleged that any of these individuals stood in a relationship of special confidence towards Robert nor identified the nature of such relationship. Additionally, Defendant Whitney does not allege how Battle, Farr, and AFG's representatives benefitted from the change in beneficiary.

Defendant Whitney claims that his Amended Answer pleads that "parties around Robert Veale destroyed the free will of the terminally ill Robert Veale and/or that it had been destroyed by the medication he was under." Mem. Supp. Resp. at 10. First, Defendant Whitney's Amended Answer does not state this. See Whitney Am. Answer ¶¶ 10-11. Second, even if the Amended Answer had so explicitly stated, the Amended Answer does not allege how the parties around Robert destroyed his free will. Third, this court cannot find a single Virginia case, nor has Defendant Whitney pointed to any, holding that the influence of narcotic pain medication on its own is sufficient to destroy the free will of an individual so as to give rise to a presumption of undue influence. Defendant Whitney also now claims that undue influence presumptively exists due to Defendant Mays's relationship with her father and her role as the trustee of the restated Trust. Mem. Supp. Resp. at 10-11. However, Defendant

Whitney's Amended Answer makes no such allegations with respect to Defendant Mays, and that is the pleading at issue here. See Whitney Am. Answer ¶¶ 10-11. Therefore, Defendant Whitney has insufficiently pled undue influence as a defense.

## B. Defendant L. Veale

In determining whether Defendant L. Veale sufficiently pleads duress, undue influence, or lack of mental capacity, the court refers to both his Answer and his Amended Answer. See Order of June 6, 2017, at 2-3, ECF No. 46 (stating his Amended Answer incorporates by reference his original Answer); L. Veale Am. Answer ¶ 3; Fed. R. Civ. P. 10(c). Applying the legal principles articulated above, Defendant L. Veale has not sufficiently pled duress as he fails to allege the wrongful act(s) by which "Mr. Battle and Mr. Farr" "caused Robert to change his mind concerning Trust and property management decisions." L. Veale Answer at 1. Additionally, Defendant L. Veale is also unable to assert duress on Robert's behalf under Virginia law, and/or has not identified any applicable exception to that general rule.[4]

Defendant L. Veale has, however, sufficiently pled undue influence by alleging with particularity great weakness of mind and suspicious circumstances. First, Defendant L. Veale

---

[4] See supra at 14-16.

discusses in detail his concerns for Robert's decision-making abilities:

> On two occasions I approached lawyer [Veronica] Williams and advised her that I felt that Robert could not make rational and sound decisions concerning his estate/trust and his physical care and wellbeing. Robert was in extreme pain, on strong medication, refused to hire a 24-hour health care provider (would only pay for 8-hour care even though his insurance would pay for 24-hour care), would not provide me with sound guidance on paying his bills and taxes and spoke to myself and others about his committing suicide.

L. Veale Answer at 1. He also alleges suspicious circumstances, asserting that the signatures on the restated Trust document and change in beneficiary form, both dated November 23, 2016, appear to be forgeries, see id., and questioning the last-minute nature of the documents dated November 23, 2016. See id. ("Based on the speed [with] which lawyer Williams removed me, without a formal letter of resignation, as Trustee and replaced me with Mr. Battle suggests that lawyer Williams was not willing to have Robert evaluated to determine his mental and physical competency to make independent decisions."); L. Veale Am. Answer ¶ 3 ("Why did Mr. Gonzalez [of AFG] wait until Robert was a few days from death, when Robert was heavily medicated, when Robert was physically incapacitated (could not sign own name) to bring the change of beneficiary document/s to Robert and then have someone else sign Robert's name? Mr. Gonzalez had more than enough time to bring any oversight on Robert[']s part to me (the acting

co-trustee) and/or Robert in a timelier manner.") He also questions the disposition of the assets. See L. Veale Am. Answer ¶ 4 ("At one of the meetings I had with Robert in the Sept/Oct 2016 period, in the presence of Lawyer Williams, Mr. Gonzalez and others, Robert stated that he absolutely did not want Sahde Z. Mays to benefit in any way from his Trust. The Trust was created to support his granddaughter and his granddaughter's offspring.").

Further, Defendant L. Veale attaches as exhibits documents that appear to support these allegations. These include emails communicating with Dimingo Gonzalez ("Gonzalez") of AFG, see Ex. 1, ECF No. 47-1 (renewing request for copies of all insurance policies on November 5, 2016); with Robert's attorney, Veronica Williams ("Williams"),[5] see Ex. 5, at 11, ECF No. 9-5 (discussing conversation of November 22, 2016 between Williams and Defendant L. Veale, stating his belief that "because of Robert[']s physical and mental condition his so called friends are maneuvering/persuading him to make unsound decisions concerning his estate," and "strongly suggest[ing] that Robert be examined by a physic[ian] to determine if he is mentally competent enough to make independent/life and death impacting decisions"); as well as a note purportedly signed by Robert that

---

[5] See supra note 1.

states that Defendant Mays is not to be informed of Robert's death when it occurs, see Ex. 4, ECF No. 9-4.

Finally, Defendant L. Veale introduces new complications in the timeline of Robert's decision-making regarding his life insurance policies and Trust: Two of Defendant L. Veale's exhibits are a "Certificate of Trust" and a "Durable Financial General Power of Attorney," both executed on September 10, 2016. Ex. 5, at 1-10, ECF No. 9-5. The Certificate of Trust indicates that the Trust was restated on September 10, 2016, or at least that there was an attempt to do so. Id. at 1. Williams served as the notary for both of these documents. Id. at 2, 10. No other party or filing has mentioned the events of September 10, 2016. Thus, Defendant L. Veale has sufficiently pled undue influence by advancing a theory of great weakness of mind and suspicious circumstances, and pleading particular facts in support thereof.

To the extent Defendant L. Veale advances, in the alternative, the confidential relationship theory of undue influence, he has insufficiently pled such theory with respect to Battle, Farr, Williams, or Gonzalez. Although Defendant L. Veale alleges that Battle and Farr, as friends of Robert, "on several occasions caused Robert to change his mind concerning Trust and property management decisions that Robert and I made together," L. Veale Answer at 1, mere friendship is not the kind of confidential relationship that can give rise to the

presumption of undue influence under Virginia law. Rather, in Virginia,

> the party asserting [undue influence] must establish . . . an agency relationship in which one party is bound to act for the benefit of another and can take no advantage himself, or between family members when one member bears also an attorney-client relationship to another member, or "when one family member provides financial advice or handles the finances of another family member."

Bailey, 639 S.E.2d at 293-94 (quoting Friendly Ice Cream Corp. v. Beckner, 597 S.E.2d 34, 40 (Va. 2004) (emphasis omitted)). With respect to Williams and Gonzalez, to the extent he alleges an agency relationship between these individuals and Robert, Defendant L. Veale does not allege how they benefitted from the change in beneficiary. For these reasons, Defendant L. Veale has not sufficiently pled undue influence under the confidential relationship theory.

Defendant L. Veale has also pled Robert lacked mental capacity on November 23, 2016. As a preliminary matter, lack of mental capacity is not a species of fraud, see generally Garland ex rel. Cash v. Fitzgerald, 28 Va. Cir. 548, 1992 WL 12024795 (Cir. Ct. Aug. 31, 1992) (listing lack of mental capacity and fraud as separate grounds for relief and discussing the requirements of each), and, thus, Rule 9(b)'s requirement of pleading with particularity does not apply to it. Accordingly, the court must determine the standard by which to judge the

23

sufficiency of this pleading. The United States Court of Appeals for the Fourth Circuit has held that "[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." Clem v. Corbeau, 98 F. App'x 197, 203 (4th Cir. 2004) (internal quotation marks and citations omitted) (second alteration in original). This was in accord with the decisions of the United States Supreme Court with respect to the pleading standards set forth in Federal Rule of Civil Procedure 8(a) prior to the Supreme Court's decisions in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Info. Planning & Mgmt. Serv. Inc. v. Dollar Gen. Corp., No. 2:15cv206, 2016 WL 69902, at *3-4 (E.D. Va. Jan. 5, 2016) (Jackson, J.). Since Twombly and Iqbal were decided, however, the Fourth Circuit has not addressed whether the heightened pleading standard of Twombly/Iqbal—that alleged facts, taken as true, plausibly support an entitlement to relief—applies to the pleading of affirmative defenses, and district courts are divided on the question, including within the Eastern District of Virginia. Info. Planning & Mgmt. Serv. Inc., 2016 WL 69902, at *4 (collecting cases from the Eastern District of Virginia, as well as from the other district courts in the Fourth Circuit, and discussing split); Certusview Techs., LLC, 2014 WL 12591937, at *4-5 (same).

The majority of the decisions from this court, however, support the view that Twombly/Iqbal does not apply to the pleading of affirmative defenses because the text of Federal Rule of Civil Procedure 8(b)(1)(A) and (c)(1), which governs the pleading of defenses, "does not track the text of Rule 8(a)(2)," which governs the pleading of a claim to relief. See Certusview Techs., LLC, 2014 WL 12591937, at *5 (discussing the plain language of Rule 8(b)(1)(A) and (c)(1) and determining that Twombly/Iqbal does not apply to pleading of affirmative defenses). However, this court need not weigh in on this issue at this time, as here, Defendant L. Veale has sufficiently pled lack of mental capacity even under the heightened Twombly/Iqbal standard.

In Virginia, "the law presumes that there is, in every person, capacity to contract and that the burden is upon the person claiming an exemption under this rule to establish incapacity." Cent. Nat'l Bank of Richmond v. Warner, 17 Va. Cir. 444, 1961 WL 66110, at *1 (Cir. Ct. Mar. 14, 1961) (citing Chesapeake & O. Ry. v. Mosby, 24 S.E. 916 (Va. 1896)). It is further "well established that mere weakness of mind, immaturity of reasoning, or mere absence of experience or skill upon the matter under contract affords per se no ground for a claim of incapacity, but additional facts, if proven, may establish such incapacity." Id. (internal citations omitted). There is no

25

bright-line defining capacity; rather, the test is fact-specific and requires a determination of whether the party had, at the time, sufficient mental capacity to understand the nature and consequences of the transaction. Id.; Bailey v. Bailey, 677 S.E.2d 56, 60 (Va. Ct. App. 2009).

Defendant L. Veale alleges that he had questions about Robert's capacity, arising from Robert being in "extreme pain" and "on strong medication," for some time, including the day the change of beneficiary form was signed. See L. Veale Answer at 1; Ex. 5, at 11, ECF No. 9-5. He alleges specific instances where he questioned Robert's capacity to "make rational and sound decisions," those being Robert's refusal to hire a 24-hour health care provider, despite his insurance covering such care, and Robert's failure to provide "sound guidance on paying his bills and taxes." L. Veale Answer at 1. Therefore, Defendant L. Veale has sufficiently pled lack of mental capacity.

## V.

In summary, the court **GRANTS** the Plaintiffs' Motion to Deposit, provided that the Benefits are deposited with the court's registry within fourteen (14) days of the date of entry of this Memorandum Opinion and Order, after which deposit the Plaintiffs are **DISMISSED** from this action.

The court **GRANTS IN PART AND DENIES IN PART** Defendant Mays's Motion to Strike. Specifically, the court **FINDS** that

Defendant Whitney has insufficiently pled duress and undue influence and **STRIKES** those defenses, but **GRANTS** leave to amend thereto. Any amended pleading shall be filed with the court within twenty-one (21) days of the date of entry of this Memorandum Opinion and Order.[6] In regard to Defendant L. Veale, the court **FINDS** that he has sufficiently pled undue influence, under a theory of great weakness of mind and suspicious circumstances, as well as lack of mental capacity. However, the court **FINDS** Defendant L. Veale has insufficiently pled duress and undue influence under a confidential relationship theory and **STRIKES** those defenses, but **GRANTS** leave to amend thereto. Any amended pleading shall be filed with the court within twenty-one (21) days of the date of entry of this Memorandum Opinion and Order.[7] Further, the court **DENIES** Defendant Mays's request for a determination that interpleader is not appropriate.

Defendant Lentz seeks dismissal from this suit on the grounds that he makes no claim to the proceeds of the policies at issue in his status as the initial trustee of the Trust. Lentz Answer at 2. No other party objected to this dismissal. Accordingly, Defendant Lentz is **DISMISSED** from this action.

----

[6] If facts are developed during discovery to support an affirmative defense, leave of court may be sought to amend the Answer to add such a defense. See Fed. R. Civ. P. 15(a).

[7] See supra note 6.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief Judge

REBECCA BEACH SMITH
CHIEF JUDGE

July 31, 2017